Oral argument not to exceed 15 minutes per side. Mr. Spiker, you may proceed for the appellants. Good morning, Your Honors. I'm Tom Spiker. I'm here for the appellants, Samantha Taczak, Keith Washburn, and the City of Chattanooga. And I would like to reserve five minutes for rebuttal. Very well. First, my first time arguing in the federal appellate courts, I thank you for the privilege and the honor. It's humbling to be here, and I think we're here on an important issue. Understanding the judge's instructions to focus on, I think, what is the most critical issue that resolves this case in favor of my clients are two unanswerable questions. The district court ruled that the police investigation, which occurred from January 2018 until September of 2018, was a reasonable amount of time. At that point, we hand over our investigation to the non-party Ross County prosecutor, and we're waiting for it to be indicted. We're holding evidence. I think the first unanswerable question is, at that point, what date do my clients docket that a constitutional violation occurs? Because we are holding the evidence. Pretty soon, probably. I'm sorry? Pretty soon would probably be the answer. Do you think it's like that Ohio Supreme Court case? I don't know that pretty soon is the answer, Your Honor. We have investigated it for January 2018 to September 2018. The Sixth Circuit Court of Appeals has held it holding currency for 18 months. With three seriously mitigating circumstances, that doesn't look like you guys have made an effort to demonstrate here, e.g. diligence. Well, I think, Your Honor, at that point, we... And the court in the 8850 case did say that this was a significant amount of time. If that's the case we're talking about, maybe I'm wrong. It is, Your Honor. That was the Supreme Court, right? I think it was the Supreme Court. You are correct, Your Honor. I misspoke. I said the Sixth Circuit. And it was only because it was countervailed by these three equally serious mitigating circumstances that the court said, OK. But the threshold finding was this is a serious amount of time and there better be something on the other side. And there was. Sure. Here, I'm not really seeing what that was. Well, I think the mitigating circumstance is we, as the... I think it's important to understand we're dealing with a municipal police department and an entirely separate entity, the Ross County Prosecutor. We hand over the investigation packet and the Ross County Prosecutor says we are reviewing and we are going to bring it before a grand jury for indictment. Is this your argument that you don't have authority to hand this stuff back? Is that right? Well, I think that is one of our arguments. I think that's an underlying argument, certainly. I mean, that argument to me, unless I'm mistaken, seems plainly beyond the scope of this interlocutory appeal. Because the district court, right or wrong, made a determination that a reasonable jury could find that your clients did have authority to return the money. As, in fact, they did eventually. They did. It wasn't the prosecutor according to the record saying do it. The district court said you did have authority and that factual determination about the existence of a genuine issue of material fact is not reviewable on an interlocutory appeal about qualified immunity. I agree, Your Honor. I agree. But I do think... We have to take that as a given here. You guys could have returned it. I understand, Your Honor. I do think it bridges into the qualified immunity analysis in the state of we are submitting it to the Ross County prosecutor. And whether there's a question of authority or not, what case law puts our reasonable officials on notice that there is a strict deadline? When the prosecutor... This goes to your distinguishing factors. We're waiting for the prosecutor to make a decision on an indictment. That's why we're not returning it. So what case puts our individuals on notice that there's a hard, fast deadline? What about the fact that the prosecutor sought... Was it right? The prosecutor sought forfeiture ultimately of $30,000, but there were other things seized that weren't returned thereafter. Correct? There was some material that was seized that was not part of the forfeiture specification. That is correct, Your Honor. So why doesn't that have to be returned immediately? Well, I think the same question kind of plays into... We don't know, as the police department, we have no way of knowing what the Ross County prosecutor is going to seek forfeiture on. We are holding the evidence... Once they seek forfeiture on the $30,000, and they ask for it back, don't you have an obligation to return it? It was returned, Your Honor. Once the forfeiture specification was put forward... 20 months later, right? It gets returned. Yes, Your Honor. I mean, 20 months later, no determination of guilt. The case gets tossed by the judge. I mean, they go in there and they take basically everything valuable from these people's home and keep it for 20 months. There's no determination of guilt. I mean, there's not even a civil forfeiture. There's not even a forfeiture attempt, I think, for well over a year. And you guys just keep it. And there's no showing of diligence or anything, and that's okay? You know, the police can do this to people? Well, I think the case law instructs us to look at the specific conduct of each individual actor. Absolutely. Samantha Taksak. Chief Keith Washburn. Samantha Taksak diligently investigates it and submits it to the prosecutor's office. She goes about and continues looking at other cases. There are items of evidence waiting for the prosecutor to make a decision whether or not to indict them. If the issue here is that there was not a speedy forfeiture, I can certainly understand reaching that conclusion, but it was not Samantha Taksak's decision, nor her inaction to bring the forfeiture, nor was it Keith Washburn's. The individual state actors were actually dealing with it. You guys took the property. You guys possessed the property. On this record, you guys had the authority to give it back. You eventually did give it back on your own decision, according to this record. And I understand your point. I totally get that. But it seems like the law is pointing responsibility toward your clients here. And just speaking for myself, your argument that you're not responsible just seems kind of not very plausible in light of the district court's determination about factual issues. I can understand that, Your Honor, and I think that's kind of an aside to the argument. As far as who's responsible or not, but looking at the individual conduct, Samantha Taksak did not make a decision as to when to indict it, nor was she able to. But she made a decision to return the stuff eventually. No, Samantha Taksak did not. She was the detective while the case was in litigation. She made a decision to return some things at some point. I don't remember what exactly. Nothing that I'm aware of in the record, Your Honor. There are a couple of points where material was returned. I have one question as somebody who was on the panel that argued the first appeal in this case. Yes, Your Honor. Where the district court entered a preliminary injunction directing your clients to return everything, right? Yes, Your Honor. And we had an oral argument in that case. And then I don't remember exactly when the argument was, but before we issued a decision, your clients, and I know it wasn't you because it's your first argument, but your clients moved to voluntarily dismiss your appeal, which we granted. And yet, for a substantial period of time afterward, your clients did not comply with the terms of the district court's preliminary injunction. Is that an accurate statement? I don't believe so, Your Honor. I believe once we noticed our – and this is my first oral argument, but I've been involved with the case. You're doing a great job, by the way. Well, thank you. It's not an easy assignment, and I commend you, so go ahead. Thank you, Your Honor. And I do not believe it's an accurate statement of the record. Once we filed the first appeal, our notice of appeal, we simultaneously moved in the district court to stay enforcement of the preliminary injunction. You got to stay. We got to stay. When did the court lift that stay? So the court – The case came back and the appeal was abandoned? So what happened was during the pendency of all of this, the state criminal action with the forfeiture was going forward. So the forfeiture was filed. The state – Just give me a date. When did the court lift its stay? Your Honor, may I answer that on rebuttal once I have a moment to consult my notes? Okay. I'd like to know when did the district court lift its stay, and when did you all return the stuff, which is what the court had ordered you to do? Because, I mean, we granted your voluntary dismissal because the implication is you're abandoning the appeal and you are now going to comply. And I was pretty surprised when I read the briefs in this case that that did not happen, and that the district court's order apparently was not obeyed. And so, you know, that's my thought. You know, you can come back about it. Your Honor, Judge Marbley has been influential in shaping my career as I appear in front of him frequently, and I do not believe he would be shy about letting us know if we did not comply with an order. What I think happened, and the record as I recall, and I will confirm this on appeal, is the stay was in effect. We were awaiting your decision. The criminal case resolved. The judge tossed it out, as you said. We simultaneously moved to voluntarily dismiss this appeal and lift the stay so that we could return the currency. Okay. Well, if you could just tell me, maybe I'm mistaken, and that's why I'm asking. Yeah. I don't want to be mistaken and, you know, have an attitude. So if you could just tell me, what's the gap time between lifting the stay and compliance? Yes, Your Honor. I will do that. Totally fine. And I see I'm out of time. I'm not happy if that were true. Okay. Thank you. Thank you. Any questions at this point? No. All right. Thank you. All right. You'll have your five minutes rebuttal. Good morning. Good morning. Sandra Finucane, and I'm appearing on behalf of the appellees, James and Nicolette Kramer. Good morning. Good morning. You covered, Judge Kovlich, a lot of what I wanted to cover. Do you know how long it was? Can you answer his last question? Yeah. Well, there's two parts to that because there was a stay that they asked for before the first appeal, but it was only partially granted. And that's when they were disobeying the partial stay because they hadn't asked to forfeit the physical items of property that weren't currency. So, like the coins? Yeah. Correct. The coin collection, the cameras, all that. So, they repeatedly, like... Wait. I'm sorry. Just so I understand. Partial stay of the money. Right. Because that was the only thing that was in the forfeiture specification. I get it. Not even all the money, but that's... I get it. No stay of the rest. You can throw some change in, but no stay of the rest. Correct. Is that what you're saying? Correct. And they did not immediately return that. They decided, well, the coin collection, which they said was face value, they didn't want to return that. We had to file motions to enforce. Then when we got that, they didn't want to return the jar of coins. So, we had to file other motions. And you filed all those with Marvlee, right? Yeah. Judge Marvlee. This was before the person... I know. Why didn't you go ask for contempt for failure to return it? Well, we sort of did. We filed a motion to enforce, and within that was embedded... We don't want to be threatening. We filed a motion to enforce, and the judge did issue a show cause order, I believe. And that's when they were arguing that, first of all, they said it was about the money amount, because they were saying that we don't have any more of the money. I don't want to set the money aside. Okay, I'm sorry. So, then they said, well, the coin collection was part of the money, even though it was all wrapped and sealed in plastic and everything. So, they said, we're not going to return that. They weren't going to return a jar of coins. Okay. So, they didn't... The answer to my question is they didn't return it immediately. Correct. We made several... Second question. I'm sorry to interrupt you. Second question is, it comes up, the appeal gets dismissed. How long after that did the money come back? Not terribly long after. There were some snafus on the part of, I believe, that Mr. Spiker was ill. Anyway, it was shortly after that. They did agree, because what they had done, once the Rule 29 motion was granted, they realized, they thought, well, we need to return the money. What they considered was the money. And I have a question about Baumholz, the Ohio case. So, the way I read that case, it's a statutory holding, right? It's under 2933.43. Well, you'd remember that better than I do, because we keep renaming these statutes. But it was, but they also applied 8850 in that case. And they used... Well, they used 8850 to interpret their statute as I read it. But you can tell me if I'm wrong, because I don't see, and I looked at the judgment line, too, to make sure I was right. It's my understanding that what they were saying is under 2933.43, five and a half months was kind of what they set as the line. They said that was excessive, correct? Right. And so, but isn't that, and I can pull it up, but I thought it was a statutory holding. I would say that it was a little more than that, because of the fact that the only thing 8850 did was deal with due process. And the statute was vague, because the statute said that upon, because remember, there used to be 30 and 60-day requirements for property to be returned in Ohio. That changed in April of 16, 17. But before that, this statute said upon seizure, the forfeiture proceedings must be initiated. So it's vague language. Hold on. I mean, Justice Resnick starts with, the issue before this court is whether the state has complied with the procedural requirements of 2933.43, right? More specifically, we are asked to determine the timeframe within the state which the state must file forfeiture petition, so as to comport with the statute. Yes. So it's a statutory holding, correct? Yes, it is, except I just would caveat that they determined the reasonable time that they used the constitutional principles in order to guide them in determining whether the statute was constitutionally applied. That appears to be what they did to me. Is this constitutionally applied? Did they use kind of the Barker four factors? Yes. Is that what they did? Yes, they did. They used everything in 8850. But you agree to interpret their statute? As if it's so that it's constitutionally applied, because it was vague. That would be my position. That's a thoughtful position. They relied heavy on it. Let me ask one more question on that. Do we have any case laws or is there any case law in the country saying a state court's interpretation of its own statutes, even when using constitutional tests, which I do agree is a thoughtful answer, even when using constitutional tests is enough to clearly establish law? In other words, I get they're obligated under Ohio law to know. Are they obligated under the Constitution to apply, to make the leap you're making, the thoughtful leap you're making, to go from statute to constitution and then know and have it be clearly established? To be clearly established. I do believe they must follow the 14th Amendment. So in order to make sure that statute comports, they have an obligation to do that, and I believe that would create clearly established law, but I would not want to just rely on bomb holes. I want to rely on 8850 and I want to rely on the main court. But 8850 doesn't set the time frame, right? No. The thing is the time frame is blurry. That doesn't mean it can't be crossed. That was an argument that they kept making that I take issue with. But 18 months in that case... But if it's blurry, it can't be clearly established. Well, no. There's a point when even a blurry line, just like we have four-factor tests, can be exceeded. And it is exceeded, and there have been many courts that have held... The main court, for example, there have been many courts that I cited where they've held that this particular length of time, federal courts, is excessive given the four-factor test under Barker, just like they do with speedy trial issues. It's not a clear... The constitutional speedy trial, there's state statutory, but the constitutional speedy trial statute can be violated and it can be clearly established. There's some point, 100 years, I don't know, but there's some point where even a blurry line... But if you don't know it, how can you expect non-lawyers to know it? Because it was so excessive. Because in 8850, they had a criminal forfeiture within 9 months. They didn't have that here. They had an indictment within 9 months of the seizure. They didn't have that here. The only problem with their criminal forfeiture was they attached it to... But 8850 did not say, after 9 months, it's unreasonable. They just didn't give a time. They said that... The thing with 8850 is the only reason they said that the significant amount of time of 18 months was acceptable was because they were criminally prosecuting her within 9 months of the seizure. And they had a criminal forfeiture. Actually, 8850 stands for filing a civil forfeiture, not a criminal, because they had a criminal forfeiture. They've never filed a civil forfeiture in this case. They waited under the wrong standard under LAVASCO, which is pre-indictment delay, which 8850 rejected. 8850 actually agreed it. It says a civil forfeiture has to be filed within a reasonable amount of time under the Barker v. Wingo standard. But they didn't file any forfeiture here for how many months? Nothing for 20 months. And they could have easily filed a civil the moment they did the seizure. They said they had probable cause. They said they investigate. Tax Act, in her search warrant affidavit, says she was investigating James Cummings for months before they got the search warrant. Months. So if you have probable cause of search, you've got probable cause to seize all their money, everything they have, and you don't have any, there's no narcotics there, you have enough probable cause, and that's what the May court held in this very same district court. I understand that argument. To file a civil forfeiture immediately. I want to ask just a kind of mundane question. There's a reference to the criminal charges against Mr. Kermans being dismissed under Ohio Rule 29. Yes. What is that? Okay, Ohio Rule 29 is when there's not enough evidence to go to a jury, so you can't have a jury trial, but the judge determines at the end of the states or it could be at the end of the defense case. End of the states case, they said, there's not enough evidence here to even get it to a jury. There's no crime here. The judge was annoyed at the entire prosecution. I know. There's a federal item on that. Okay. I just didn't know. Right, that's what Rule 29 is. So that's when they said, okay, we'll give the money back. In fact, I mean, I'm not complaining about them returning what they claimed was the amount of money at that time, even though we have no receipts and no inventory logs saying any amounts of money, nothing in the search warrant inventory returns, nothing. We didn't know what they were going to be returning until they returned it. They wouldn't even tell us in advance. They changed the amount so much. But other than that, they did return some money, and we are going to have to take that up. That's not below. Oh, they said something false, false things. Judge Griffin, you said you wanted me to bring up that stuff. They said that Mr. Cremins did not even challenge the criminal forfeiture proceedings in state court, and we had already challenged that successfully. And they don't cite to the record on that, but they never, even the state court judge, he didn't proceed on that forfeiture specification. He only proceeded on the underlying criminal count, because he knew that Judge Marbley's order and the TRO required the defendants to hold that in trust. The money had been ordered back, but it stayed, but it was also the defendants who ordered to hold that in trust, money that they said they can't even control. But anyway, so they did not proceed. So there wouldn't be any more necessity to challenge it. The judge himself, Sua Sponte, with the prosecutor, decided they could not proceed on that criminal forfeiture specification. And so it wasn't that we ignored that and then brought something later. We brought something in advance to prevent that forfeiture from being able to be effectuated, because it was delayed, unconstitutionally. Okay, any further questions? All right. Okay, thank you, Your Honor. All right, thank you. Mr. Spiker, you have five minutes for bubble. Thank you, Your Honors. I'd like to begin with answering your question as far as the timeline and clarifying that. It sounds like it might have been a big amount of time. It was not, Your Honor. So we're dealing with two completely separate time frames, just to be clear. So there is an issue both where we're talking about us dismissing our appeal and the amount of forfeiture that is actually subject to the forfeiture being returned. That is significantly later on in the case after you and your panel members have heard the case. The issue that I think you are alluding to was to whether it was noncompliance. I would direct the court to page ID number 701 of the record through 705. And that is Judge Marbley's opinion in order, granting in part our motion to clarify and finding that we did show cause as to why we did not fully comply with the order within a, I think it was less than a 30-day time frame in April and May of 2020. And the delay my friend alluded to was I was actually the one to physically go down and transfer. And when we had first set up the transfer, I contracted COVID for the first time. So there was a delay in coordinating that. And then when we got there, there was a discrepancy into what the judge had ordered returned and what was actually there. There was an amount of money ordered returned that we could not return. Judge Marbley said, keep what's subject to the forfeiture, return $2,900 and certain items. There was no currency equal to the $2,900. You can calm me down on this thing. You can make your other argument. I'll move on from there then. At the end of the day, we're talking about whether my clients should have filed civil forfeiture. I think there's a lot of debate as to whether civil forfeiture is appropriate in every single case. So I don't think we're adjudicating whether or not their decision to file civil forfeiture was appropriate or not. We're arguing about whether or not them holding the currency subject to the prosecutor deciding to file criminal forfeiture was appropriate or not. It seems to me like the real nub of this probably is clearly established. And if we just look at the 8850 case, I mean, there we have the Supreme Court of the United States saying that 18 months is a pretty long time. And basically, there better be a good reason on the other side. Is that a fair characterization? It is a fair characterization, Your Honor. Okay. I appreciate the straight answer to that. That's a good habit to be in. And then they go on to say, okay, there was a lot of diligence, and they have these three mitigating factors. And, I mean, wouldn't that authority then make clear to an officer that if we're going to hold it for 18, 19 months, that we better have these mitigating factors? Respectfully, no, Your Honor, at least not in my view. Why not? I think because we're dealing with three factors specific to that case, factors that are not present in our case. What we have are new factors. We have factors that the Supreme Court, the Sixth Circuit, the Southern District Court of Ohio have not analyzed, where we are holding evidence as custodians in kind of a limbo state for a prosecutor to decide when to bring their forfeiture. So under that mitigating factor, what case law would put our officials on notice that waiting for the prosecutor's decision is unreasonable? What if the prosecutor took four years? Again, we're debating. And would that be unreasonable? Shouldn't that be like totally obvious that you can't do it? Potentially. You start working the line towards your number. Yeah, here's the problem. The prosecutors get immunity. So there's no recourse. I mean, they filed a reclaimant or whatever they tried to file, but there's really no recourse, and you can just sit on it through negligence. Yeah, certainly. So I think to answer your question more directly, four years, yes, that blows past the line. Where do you get that from? Well, I think I would agree with you. And to answer your question, I don't get it from anywhere. I don't get it from a case. There's no case that says it. So I don't know that my reasonable officials would get it. So why isn't John Ketledge's point a valid one? Why not just 18 months that the Supreme Court seemed to indicate in 8850? Maybe they didn't clearly establish it, but they invariably seemed to indicate that that is too long. Absent mitigating factors. Right, and so what we're dealing with is, are our mitigating factors sufficient? And they're different. Do they rise to the sufficiency that the Supreme Court found in 8850? And we're certainly having a lot of debate about it. Much more debate than I think is reasonable to say lawyers and judges. We come down on either side. But for your four-year example, I think that that is such an increase in time from the 18 months in 8850 that you can draw that line, and I would probably agree with you. But what we have here is we have a very similar timeframe to 8850 and different mitigating factors. What is the case law that puts my officials on notice that these mitigating factors are not as good as these mitigating factors, which the Supreme Court, although indicating it was a long time, it was not per se a violation of due process, and it was reasonable. Any further questions? Thank you. Thank you very much, and again, thank you for your service. The case will be submitted until the next case. Thank you both.